STATE OF WEST VIRGINIA

*v.*

LUCY M. CALLICUTT, *et al.*

(No. 10252)

Submitted October 3, 1950. Decided November 28, 1950.

*Steptoe & Johnson,* for appellant.

*William C. Marland,* Attorney General, *Thomas J. Gillooly,* Assistant Attorney General, for appellee.

GIVEN, JUDGE:

This suit was instituted in the Circuit Court of Harrison County by the Deputy Commissioner of Forfeited and

Delinquent Lands, for the purpose of having sold for the benefit of the school fund, Lots 28, 29, 30, 164 and 165, in Summit Park, Coal District, Harrison County. The bill of complaint alleges that the State acquired title to the lots by virtue of a purchase made by it at a sheriff's sale of forfeited and delinquent lands, that the lots were assessed for the year 1930 in the name of Lucy M. Callicutt, returned delinquent, sold for the nonpayment of taxes for that year, and that the lots had become irredeemable. Appellant, Teddy Bork, filed his "petition and answer" in that suit, denying that title to the lots was vested in the State, denying that the lots were subject to sale for the benefit of the school fund, and alleging that he had acquired title to the lots by transfer thereof from the State by virtue of provisions of Section 3 of Article XIII of the State Constitution. The Deputy Commissioner demurred to the petition and answer, the circuit court sustained the demurrer and decreed that title to the lots was vested in the State, had become irredeemable, had not been redeemed or released, that the lots were subject to sale for the benefit of the school fund, and that the lots be sold by the Deputy Commissioner for that purpose.

The lots were acquired by Lucy M. Callicutt sometime prior to 1930, and were properly assessed for taxes for that year in her name, returned delinquent, and sold to the State for the nonpayment of such taxes by the Sheriff of Harrison County. No irregularity is alleged or shown as to such assessment or sale. By deed dated the 14th day of September, 1939, recorded the following day, Lucy M. Callicutt executed a deed purporting to convey the five lots unto appellant. The deed contained a covenant of general warranty, granting "all of their right, title and interest in and to" the lots, except that there was reserved unto the grantor "all the oil, gas and coal in and underlying said lots". The deed contained no provision relating to taxes. The lots remained on the land books in the name of Lucy M. Callicutt for the years 1931 to 1939, both inclusive, and for the years 1940 to 1945, both inclusive, in the name of Teddy Bork, but no taxes were

extended for any year from 1931 to 1945, both inclusive. There was a notation on the land books following the description of the lots for each year after 1930 to 1945, inclusive, to the effect that the lots had been sold to the State for the nonpayment of taxes assessed thereon for the year 1930.

The assessment for the year 1946 was in the name of Teddy Bork and the taxes for that year were extended by the assessor, and also that year the assessor back taxed the lots for the years 1945, 1944, 1943 and 1942. The amount of taxes so assessed for those five years was paid by Teddy Bork. No taxes were ever extended or paid for the years 1930 to 1941, both inclusive.

The petition and answer alleges that petitioner is not "an heir or devisee of the said Lucy Callicutt" and that he "has had color of title and claim to the said lots by virtue of the deed of conveyance exhibited herewith as 'Exhibit A', and has had actual and continuous possession of said lots during the entire years 1942, 1943, 1944, 1945, 1946, 1947 * * *", and that he is "informed and believes that there are no persons or person other than your petitioner and respondent who under Section 3, Article 13, of the Constitution of West Virginia are entitled to have said lands transferred to or vested in them by virtue of said Section 3, Article 13, and this defendant relies upon said Section 3, Article 13, of the Constitution of West Virginia as a defense to the plaintiff's bill to the same extent and as fully as if the same were formally here pleaded to the plaintiff's bill."

Bork's contention is that he acquired title to the five lots by virtue of a transfer thereof under the provisions contained in Section 3 of Article XIII of the Constitution of West Virginia relating to transfer of the State's title to lands to a person who "shall have had claim to and actual continuous possession of, under color of title for any five successive years after the year 1865, and have paid all State taxes charged or chargeable thereon for

said period." The State contends that its title to said lots was not transferred to appellant by virtue of the constitutional provision, for the reason that the back tax assessments for the years 1945, 1944, 1943 and 1942 were unauthorized and void, and that the payment of the taxes under the void assessment was not a satisfaction of the constitutional requirement relating to the payment of taxes.

Code, 11-4-13, as amended, requires that "real estate purchased for the State at a sale for taxes shall not be omitted from the land books but the officer whose duty it is to make out the same, shall duly enter, classify and value annually such real estate, as though no such sale had occurred, until such real estate is redeemed or otherwise disposed of by the State, but no taxes shall be extended thereon while the same remains the property of the State; * * *." This section further requires that the officer shall note on the land books "the time when the same was purchased by the State and for what year's taxes sold", and that such notation shall be continued for each year "until such real estate is redeemed or otherwise disposed of by the State", and that such officer, when redemption is effected, shall note such fact on the land books and that "taxes shall thereafter be assessed and extended against the same; * * *".

Code, 11-3-5, as amended, contains the only authority vested in the assessor for back taxing real estate and, in so far as applicable here, reads: "* * * When the assessor shall ascertain that any real or personal property in his county liable to taxation, * * * has been omitted from the land or personal property books for a period of less than five years, he shall make an entry thereof * * * and assess the same * * * for the year or years the same was omitted, * * *."

From these statutory provisions it seems clear that the assessor is required to continue the entry of land on the proper land books for each year subsequent to any sale

to the State "until such real estate is redeemed or otherwise disposed of by the State", but that no taxes shall be extended for any such year; that the assessor has no authority to back tax any land sold to the State while the title thereto remains in the State, for the reason that the land is not then "liable to taxation"; that the assessor has no authority to back tax real estate under any circumstance except where the same has been omitted from the land books, and only then if the land has been omitted from the land books "for a peried of less than five years".

There is no constitutional provision limiting the right or power of the Legislature to regulate the manner or method of assessment or collection of taxes except, of course, the requirement that taxation must be uniform. Therefore, the action of the assessor in back taxing these lots for the years 1945, 1944, 1943 and 1942, being made without authority and expressly against the command of the statutory provisions, was without authority and void. Does the payment of such void assessments satisfy the requirement of the constitutional provision requiring the payment of taxes "charged or chargeable" for such years?

Appellant relies upon the case of *Stiles* v. *Layman*, 127 W. Va. 507, 33 S. E. 2d 601. In that case taxes assessed for the year 1930 in the name of Stiles were not paid, the property returned delinquent and sold to Layman, who obtained a tax deed therefor in December, 1933. Layman, or his successors in title, held actual possession of the property until after institution of a suit in August, 1940, by the heirs of the former owner of the property, to have the tax deed decreed void. Taxes for the years 1939, 1938, 1937 and 1936 were regularly assessed and paid by Layman, or successors in title, and the property was back taxed for the year 1935, notwithstanding the same remained on the land books after that year in the name of the former owner. The taxes were not extended for that year. We are of the opinion that the *Stiles* case is clearly distinguishable from the instant case in that the sale there considered was one made by the sheriff to an individual,

and in the instant case the sale was one made by the sheriff to the State. The provisions of the statutes quoted above apply only to sales made by the sheriff to the State. Other provisions of Code, 11-4-13, as amended, are expressly made applicable to sales to individuals.

In *Mahaffey* v. *Batson,* 128 W. Va. 55, 36 S. E. 2d 497, relators in a mandamus proceeding sought to compel the Assessor of Taylor County to back tax real estate, title to which had previously become vested in the State by virtue of a sheriff's sale thereof for nonpayment of taxes assessed thereon. The relator had previously acquired, by deed from the former owner, whatever interest in the property the former owner then had. The Court denied the writ as to the back tax assessment and held, point 3, syllabus:

> "The provisions of Code, 11-3-5, as amended by Chapter 61, Acts of the Legislature of 1933, relating to the entry on the land books and back-taxing of real estate and personal property omitted therefrom do not warrant the back-taxing of real estate, the title to which is vested in the State through purchase at a sheriff's sale thereof for nonpayment of the taxes assessed thereon."

In the opinion on page 68, 128 W. Va. Reports, the Court stated:

> "* * * If the statute is followed, it is never off the land books, because it is expressly required that the same be carried on the land books in the name of the former owner, but that taxes shall not be extended. That being true, there was no omission to which Code, 11-3-5, as amended can be applied. Furthermore, we are of opinion that the Constitution contemplates that if one would take advantage of the transfer provisions of Section 3, Article XIII of the Constitution, possession and payment of taxes must be concurrent. Taxes cannot be paid without the same appearing on the land books, and that of itself is notice to tax-collecting officials that someone is making a claim to the land involved, and is notice to the State to assert any rights it may have as against such

lands, in advance of the period when possession and payment of taxes may operate to transfer the State's title to the person in whose name the land is charged. The actual and continuous possession may be notice to people residing near the land, but, in practice, may not be notice to tax-collecting officials. Payment of taxes and possession should coincide. We know of no provision of the statute which, under the guise of back-taxing, authorizes the payment of taxes to cover a period during which possession is claimed. The statute which allows back-taxing, we think, only applies to cases where property is omitted, and, as stated above, we are assuming that this land was never omitted from the land books of Taylor County, although since the title passed to the State, taxes have not been extended."

We think the principles laid down in the *Mahaffey* case are controlling in the instant case and that the back tax assessment for the years 1945, 1944, 1943 and 1942, and the payment of such assessments covering the years for which the lots were not omitted from the land books, can not be made a basis for a transfer of the State's title to the lots unto appellant by virtue of the constitutional provisions referred to above. The title being in the State, no taxes were "chargeable" against the lots for those years. To hold otherwise would permit that to be done indirectly which the statute expressly prohibits.

It seems to have been contended in the court below that the decision in the *Mahaffey* case may have been affected by the 1947 Amendment to Code, 11A-4-39. We think not. That act as amended merely provides that: "* * * If all the taxes due on any land for the assessment year one thousand nine hundred thirty-six and for all years subsequent thereto have been paid, all title to any such land theretofore acquired by the State shall be and is hereby released. * * *," and that "Nothing contained in this section shall be held or construed to affect in any way the right of a person claiming title to any land by transfer, as provided in section three, article thirteen of the constitution."

We conclude, therefore, that the action of the trial court in sustaining the demurrer to the petition and answer of appellant should be affirmed.

*Affirmed.*